### W. W. Cate v. Fife & Child.

October Term, 1907.

Present: Rowell, C. J., Tyler, Munson, and Watson, JJ.

Opinion filed November 26, 1907.

*Trover—Evidence—Title to Property—Acts Constituting Con-
version—Admissibility of Books of Account—Witnesses—
Scope of Cross-Examination—Discretion of Court—Instruc-
tions—Presumptions.*

Where the ownership of personal property is a material and ultimate
fact to be determined on conflicting evidence, witnesses in respect
thereof should be confined to stating facts within their knowledge
that bear thereon, and not be allowed to give their conclusions or
opinions as to the ultimate fact.

In trover for the conversion of a quantity of wood and lumber, where
it appeared that the parties had been associated in the lumber
business, and that in January, 1905, they had a settlement in which
defendants agreed to relinquish any right or interest that they,
or either of them, might have in any property that theretofore
might "have been sold or disposed of" by plaintiff, the court prop-
erly excluded plaintiff's evidence, offered for the purpose of show-
ing that, in consequence of said settlement, defendants did not
own the wood in question when this suit was brought, that in
November, 1903, plaintiff mortgaged that wood to secure all he
then owed or might thereafter owe the mortgagee, with the verbal
understanding that he might sell the wood, apply the proceeds on
such indebtedness, and pay any excess to plaintiff; there being
no offer to show that the mortgagee had exercised any control
over the wood, nor that it had been in any way "sold or disposed
of"; nor that the condition of the mortgage had been broken.

It is better practice to limit cross-examination to matters inquired
about in the direct, but that rests in the discretion of the trial.
court.

If error, it was harmless, to allow plaintiff to be cross-examined as to
his understanding on a matter about which there was no dispute.

In trover for lumber, where defendants admit the conversion, unless they establish their ownership, the court properly excluded plaintiff's offered evidence that defendants had threatened him with arrest for having taken some of the lumber in question, and that they denied his right to any part of it.

In trover for the conversion of property on which defendants claimed to have held a mortgage, a tax inventory of defendants', showing the amounts due from solvent debtors, was inadmissible on the question of the right to the property, where it did not appear that plaintiff was a solvent debtor when the inventory was made.

In an action of trover, where the issue is whether the parties were governed by a verbal agreement or by a prior written contract, defendants' books containing accounts between the parties are admissible to show whether plaintiff had been credited with items to which he would be entitled under the written contract.

Where parties to a written contract enter into a verbal agreement, and the only issue is whether they agreed on new terms or to continue under the old contract, a requested instruction that there was no presumption of a continuance of the written contract was properly refused.

TROVER for a quantity of wood and lumber. Plea, the general issue. Trial by jury at the March Term, 1907, Washington County, *Miles*, J., presiding. Verdict and judgment for the defendant. The plaintiff excepted. The opinion sufficiently states the case.

*R. E. Bullard* and *H. C. Shurtleff* for the plaintiff.

It was error to exclude plaintiff's offer that, previous to the settlement he had mortgaged the wood in question, with the privilege in the mortgagee of selling the wood and applying the proceeds on the mortgage indebtedness. By that mortgage plaintiff "sold and disposed of" the wood within the meaning of the contract of settlement. *Coulter* v. *Lampkin*, 88 Ga. 277.

The inventory offered was a sworn statement of defendants contradicting their position taken in the trial, and it was error to exclude it. *Morse* v. *Bruce's Est.*, 70 Vt. 378.

*R. M. Harvey*, and *R. W. Hulburd* for the defendants.

The court properly refused to allow defendant to be asked whether he owned the wood; that was an ultimate fact for the jury to determine on the conflicting evidence as to the facts and circumstances in issue. *Simpson* v. *Smith & Barnes*, 27 Kan. 565; *Kirkpatrick* v. *Clark*, 8 L. R. A. 511; *Clough* v. *Patrick*, 37 Vt. 421; *Richler* v. *Ruse*, 171 N. Y. 577; *Olson* v. *O'Connor*, 81 Am. St. Rep. 595; 17 Cyc. 223 and notes.

TYLER, J.   Trover for a quantity of wood and lumber.   The defendants claimed to own the property and denied converting it if the plaintiff owned it.   The exceptions are to the rulings admitting and excluding testimony and to the refusal of the court to comply with one request to charge.

In the year 1895 the plaintiff was engaged in lumber business with defendant Child, and his evidence tended to show that he made a verbal contract with both the defendants, by which they were to furnish him money to buy logs, pay his help, insurance, taxes, and all other general expenses incident to the business; that they were to market the manufactured lumber and receive from him one dollar per thousand feet sold with interest on the money so furnished.

The defendants denied making a verbal contract, and their evidence tended to show that, instead of so doing, they and the plaintiff adopted, without signing, a written contract that the plaintiff and Child made in January, 1893, and operated under down to 1895, by which the plaintiff was to measure all the logs and lumber, saw the logs, prepare the lumber for market and deliver it on the cars for Child, at Wolcott, for specified prices, and that Child should pay over to the plaintiff all money received therefor after deducting expenses and a profit that Child, by the agreement, was to receive.

It appeared that some kind of an agreement was made between the plaintiff and these defendants, by which the latter were "in some way to finance the plaintiff in his lumber business." The plaintiff mortgaged his farm, a house and lot and his mills to the defendants to secure the payment of his note of ten thousand dollars and all other indebtedness to them, and in November, 1896, further secured them by a chattel mortgage on the logs and lumber situated about the mills.

The logs brought from the plaintiff's farm were, by agreement, to be treated by the defendants, in keeping their accounts,

the same as logs purchased with money advanced by them, but they denied that any wood and lumber sued for came from the plaintiff's land.

These parties carried on business thereafter until December, 1903, and it was a material question in the trial whether they operated under the written contract, or under a new verbal one, for the court ruled, without exception by the plaintiff, that under the written contract the logs were Child's and that he had a right to sell and dispose of all the products thereof.

In December, 1903, the plaintiff, on account of some disagreement with the defendants, refused to continue the business and the defendants took possession of the mills by virtue of their mortgages and conducted the business until January, 1905, when they brought a foreclosure suit which was referred to a master but afterwards settled by what was called during the trial the "settlement contract."

When the defendants took possession there was in the mill-yards a quantity of rough and dressed lumber and slab-wood which their evidence tended to show was largely sawed from logs that were brought there under the contract existing between the parties after the chattel mortgage was given. They also claimed that, if any logs or lumber were in the mill-yard when that mortgage was given, they were included in its terms.

It was conceded by the plaintiff that the ownership of the lumber was the same as that of the logs from which it was sawed. The defendants claimed a right to sell the lumber by virtue of the written contract and also under their chattel mortgage, the condition of which they claimed had been broken when they took possession. Their evidence tended to show that the slab-wood that they had sold and for which the plaintiff seeks to recover was sold and credited to the plaintiff before the settlement contract was executed. The plaintiff claimed to recover both for what defendants had sold and what remained unsold and denied that the written contract was in force or that the condition of the mortgage had been broken. The main controversy was about the ownership of the property sold by the defendants, and this seems to have depended largely upon whether the parties proceeded under the old or a new contract. This is a sufficient statement of the questions in issue to show the relevancy of the exceptions to be considered.

1.  The plaintiff called defendant Fife as a witness and in the course of his examination asked him: "Do you own that wood or does Mr. Cate?" The answer was excluded and the plaintiff excepted. There was no error in the ruling for the question was for the determination of the jury upon conflicting testimony. It is the general rule that, when ownership is a material and ultimate fact to be determined, and is controverted upon the trial, the witnesses should testify to the principal facts within their knowledge which bear upon such question,. and not give their mere opinions and conclusions thereon. *Olson* v. *O'Connor*, 81 Am. St. Rep. 595, 9 No. Dak. 504, and cases cited in the opinion. But the Court there said that all the authorities were that where the answer as to ownership is direct, but is subsequently qualified by a statement of the facts relative to it, or tending to show such ownership, and discloses the facts upon which the answer is based, the error is cured. In the present case it is evident that the answer could only have been the expression of the witness' opinion upon the controverted questions whether the written contract was continued in force, or whether a new contract was made, and whether the defendants had a right to take possession of the wood and lumber under their mortgage. Besides, the exclusion of the answer could not have harmed the plaintiff unless it would have been that *he* owned the property inquired about, and there was no intimation to the court that such an answer, which was at variance with the whole claim of the defence, was expected; and it would not have aided the plaintiff's claim of conversion if the witness had answered that the *defendants* owned the property for the exceptions state that the defendants claimed ownership.

2.  The "settlement contract," made Jan. 27, 1905, contained this clause: "and the parties of the first part (the defendants) further agree, * * *, to relinquish any claim, right, or interest, by way of mortgage or otherwise, that they or either of them may have in or to any property, real or personal, or the proceeds thereof, that may have been sold or disposed of by the parties of the second part or either of them previous to the date above mentioned." The plaintiff offered to show by one Haskell that the plaintiff, in November, 1903, mortgaged said wood to him, conditioned to pay all that the plaintiff owed him or might thereafter owe him, with a verbal understanding that Haskell might sell the wood and apply the proceeds on such

indebtedness and pay any excess to the plaintiff. The purpose of the offer was to show that the defendants did not own the wood when this suit was brought. There was no offer to show that Haskell had taken possession of, or moved the wood from the premises, or exercised any control over it, nor that it had in any way been "sold or disposed of," nor that the condition of the mortgage had been broken so that Haskell had a right to sell the property, therefore the offer was properly excluded.

3. While the plaintiff was under cross-examination he was asked if he did not understand that the defendants took the place of Child in the business. No inquiry had been made of the plaintiff upon this subject in his direct examination. The plaintiff answered, subject to his exception, that Fife so informed him, and said that the Child lumber and the Fife & Child lumber need no longer be kept separate. It is the better practice to limit the cross-examination of a witness to matters inquired about in the direct, but this rests in the discretion of the trial court. *Carpenter* v. *Willey*, 65 Vt. 168, 26 Atl. 488. It is true that the plaintiff could only state in his answer what defendant Fife told him, but the facts appeared in the case without objection by the plaintiff that he and Child at first did business together and that the defendants succeeded Child in the business. These facts were a part of the history of the business, and the question only called for the plaintiff's understanding of a subject about which there seems to have been no dispute. It was not reversible error to admit the answer. *Linsley* v. *Lovely*, 26 Vt. 123.

4. The plaintiff offered to show that at the trial in the foreclosure suit the defendants testified that they had threatened the plaintiff with arrest for having taken some of the lumber of which the lumber in suit was a part, and denied his right to any part of it. The offer was properly excluded. The threats and denials, if made, were consistent with the defendants' claim of ownership of at least a part of the lumber. They were immaterial as tending to show a conversion of the lumber by them for they admitted the conversion unless they establish their ownership of the property.

5. The plaintiff offered in evidence the defendants' tax inventory of 1903 as bearing upon the question of the ownership of the property in controversy and to contradict the defendants upon the question of the condition of the mortgages being broken.

The inventory was produced and identified and it showed that the defendants swore therein that there was only five hundred dollars due them from solvent debtors, including accounts, notes, contracts and mortgages on real and personal estate. The offered evidence was excluded. The real estate and the chattel mortgage seem to have been given by the plaintiff to the defendants at the time the defendants succeeded Childs in business, and to secure them for money furnished. In December, 1903, the plaintiff, on account of some disagreement with the defendants, refused to manufacture lumber, and the latter took possession of the mills and carried on the business until January, 1905, when they foreclosed their mortgages. If this answer in the inventory had been admitted in evidence what argument could the plaintiff have based upon it? He could not have claimed that he was a solvent debtor in April, 1903, for there was no evidence in the case tending to show such fact; nor that the defendants' security was adequate; on the contrary, the fact that in December, 1903, the defendants took possession of the mortgaged property, and in January, 1905, foreclosed their real estate mortgage which resulted in the settlement contract in which the plaintiff admitted that twenty thousand dollars was due the defendants in equity, tended to show that their notes and accounts were not due from a solvent debtor when they made their inventory. The case does not show the value of the mortgaged property as compared with the amount of the defendants' demands against the plaintiff, and for anything that appears in the case the answer in the inventory was correct.

6. The plaintiff offered in evidence the books of accounts kept by the defendant Fife of the transactions between the parties for the purpose of showing that they conducted the business under a new contract and not under the written one. The plaintiff did not claim that the books contained any evidence of conversion of the property sued for, but that they showed that the defendants had not paid or credited the plaintiff with kiln-drying and dressing different kinds of lumber as provided in the written contract. The exceptions show that Fife kept the books and entered on one side all receipts from the business and on the other side all sums paid out by the defendants. The defendants did not claim that the books showed items of credit for kiln-drying and dressing lumber unless they were included in gross sums credited to the plaintiff. The plaintiff claimed that

these gross sums did not include the items for kiln-drying and dressing lumber. The credit side of the books was first offered and excluded and afterwards both sides were excluded. The precise point of the exception to this ruling was not that the books were incorrectly kept, but that they were correct and failed to show credits to the plaintiff which would have appeared if the parties had been conducting business under the written contract. It may be true that "gross amounts" included these items, but whether they did or not was a fact for the jury to determine upon proper evidence. If those items were not credited to the plaintiff, the fact of their omission tended to show that the parties were operating under a new contract. We think the exclusion of the books for the purpose for which they were offered was error.

7. The defendants' counsel said in argument to the jury that after defendant Fife began dealing with the plaintiff the parties were presumed to continue to transact business under the written contract as the plaintiff and Child had previously done. In the circumstances of this case there was no legal presumption of a continuance of the written contract, like the presumption of the continuance of life, or sanity, or even of a partnership, for here it was conceded that after the plaintiff and Child had been in business two or three years under the written contract, a verbal agreement was made between the plaintiff and both defendants by which the latter were "to finance the plaintiff," etc. So there was an interruption of the former agreement, and the question was whether the parties then agreed upon new terms, or to continue business under the terms of the old contract. From what appears in the exceptions we do not understand that the defendants' counsel was stating a legal presumption to the jury, but argued, as a presumption of fact, that the terms of the written contract were adopted. A schedule of prices having been adopted in the written contract to be allowed the plaintiff for kiln-drying and dressing the lumber, it was legitimate argument to urge to the jury that it was a reasonable presumption that the parties conducted the business under that schedule, especially if the evidence did not disclose a reason for a change in prices. Prof. Greenleaf says, Vol. 1, § 44, that presumptions of fact are mere arguments, of which the major premise is not a rule of law; that they belong equally to any and every subject-matter, and are to be judged by the common and

received tests of the truth of propositions and the validity of arguments; that while presumptions of law depend upon fixed rules, these natural presumptions are derived wholly and directly from the circumstances of the particular case, by means of the common experience of mankind. There was no error in the refusal of the court to comply with the plaintiff's request made at the end of the charge to instruct the jury that there was no presumption of a continuance of the written contract.

*Judgment reversed and cause remanded.*