CECLE G. PEARSON

*v.*

W. P. DODD, *et al.*

*and*

COLUMBIA GAS TRANSMISSION CORPORATION

(No. 13257)

Decided December 19, 1975.

*Rex Burford* for appellant.

*William E. Hamb* and *Joseph F. Wagner* for Dodd.

*Wm. Roy Rice, Daniel L. Bell, Jr., Thomas E. Morgan* for Columbia Gas Transmission.

HADEN, CHIEF JUSTICE:

This is an appeal from a final order of the Circuit Court of Kanawha County which held that the appellant, Cecle G. Pearson, did not own any part of the oil and gas interest contended for in her action to quiet title against the appellees, W. P. Dodd, Ernestine Dodd, his wife, and Columbia Gas Transmission Corporation.

The facts in this case are essentially undisputed. By a deed from her son, H. C. Pearson, Jr., dated February 20, 1937 and recorded August 9, 1937, the appellant acquired a full one-fourth of all the oil and gas in sixty-eight acres of land, known as the Sarah A. Null tract, located in Union District, Kanawha County. The appellant did not enter her name into the land books and thus, the assessment involved in this action appeared under Union District, Kanawha County, as follows:

"1938  O'Dell, W. H. (predecessor in title to H. C. Pearson, Jr.) and H. C. Pearson, Jr. 1/2 O & G Int 68A Wts Martins Br.

1939) Pearson, H. C. Jr. 68 A. 1/4 O & G Int Wts
thru) Martins Br.
1943)

1944) Pearson, H. C. Jr. 68 A. 1/8 O & G Int Wts
thru) Martins Br.
1957)

1958) Pearson, H. C. Jr. 68 A. 1/8A O & G Int
thru) Wts Martins Br."
1966)

Although the tax tickets contained the name of H. C. Pearson, Jr., the senior Mr. Pearson, appellant's husband, paid the taxes for his wife's mineral interest in the Sarah A. Null tract from the time of the first assessment in 1938 until 1960. H. C. Pearson, Jr. died in 1958; the taxes for that year were assessed and paid in his name. The 1959 and 1960 taxes, likewise assessed, were paid also. In 1961, because of an oversight, Cecle Pearson failed to pay the real estate taxes on this interest. As a result, the assessment went delinquent, and in 1962, the property was sold to the State. In 1964, the property was certified by the State Auditor. Two years later the Deputy Commissioner of Forfeited and Delinquent Lands for Kanawha County instituted a suit, in the name of the State of West Virginia, for the sale of this and other delinquent lands. By a tax deed, the purchaser, W. P. Dodd, was conveyed "68 Acres, 1/8 Acre Oil and Gas interest ... being the same property conveyed to H. C. Pearson, Jr., by W. H. O'Dell ... in Deed Book 428, at page 53. ... "

The only notice given of the sale of this delinquent land was by way of publication in the Charleston Daily Mail and the Charleston Gazette on April 16 and April 23, 1966. The public notice misdescribed the interest as "68 Acres, *1/8* Acre oil and gas interest" and listed the former owner as *"H. C. Pearson, Jr."* (Emphasis supplied.) The Dodds obtained the tax deed on April 26, 1966 for $30.00. After ratifying a former lease agreement with Columbia Gas, the Dodds granted Columbia Gas the right to drill a gas well in 1967. In late March of 1968, at a cost of $104,500.87, Columbia Gas completed the well on the 68 acres in question with an initial open flow of one hundred million cubic feet of Newburg gas. On July 26, 1968, Cecle G. Pearson paid the State Auditor $101.86 in an attempt to redeem her interest which, she asserted, had forfeited for nonentry for the years 1938 to 1968. Cecle G. Pearson then commenced this action against the Dodds and Columbia Gas on October 15, 1968.

The appellant has assigned several errors as grounds for reversal, but the ultimate issue in the case remains as the parties agreed by the circuit court order of July 9, 1971:

"[W]hether or not the plaintiff, Cecle G. Pearson, owns all or any part of the oil and gas interests asserted in the complaint filed herein, and whether or not the tax deed described in the complaint filed in this action and the other instruments based thereon, be set aside as a cloud upon the title of the plaintiff in and to the same oil and gas interest."

For reasons which shall appear, this Court is of the opinion that the appellant owns no part of the mineral interests in the subject property, and thus, that the decision of the Circuit Court of Kanawha County is correct.

The Court believes that the following questions, raised by the appellant, merit our consideration:

1. Whether the suit, entitled *State v. L. (Lemuel) A. Whittington, et al.*, upon which the tax deed is based is *res adjudicata* to the interest of the appellant?

2. Whether a forfeiture due to nonentry, or a delinquency due to non-payment, occurred?

3. Whether various mistakes, concededly made during the tax sale proceeding, rendered such proceeding void or whether these mistakes were cured by *W. Va. Code* 1931, 11A-4-33, as amended?

4. Whether *W. Va. Code* 1931, 11A-4-12, as amended, allowing a "delinquent sale" action to proceed against a former owner, who has notice of the action, if at all, through an order of publication, merely, is unconstitutional?

I

Appellees assert that the circuit court suit for the sale of lands, entitled *State v. L. (Lemuel) A. Whittington, et al.* was *res adjudicata* to the action brought by the appellant below. Appellees cite *Robinson Improvement Co.*

*v. Tasa Coal Co.*, 143 W. Va. 293, 101 S.E.2d 67 (1957) for this proposition. *Robinson*, however, is not controlling because the criteria for *res adjudicata*, succinctly set forth in *Hannah v. Beasley*, 132 W. Va. 814, 53 S.E.2d 729 (1949), are not present:

> "To justify the application of the doctrine of *res judicata*, ' ... there must be a concurrence of four conditions, namely: (1) identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons, and of parties to the action; (4) identity of the quality in the persons for or against whom the claim is made.' Opinion. *Marguerite Coal Co. v. Meadow River Lumber Co.*, 98 W. Va. 698." *Id. Syllabus.*

Because the foregoing conditions were not satisfied, the circuit court below had the power to entertain the suit brought by the appellant, and consequently, this Court has the authority to consider the merits of this case on appeal.

## II

By way of introduction, a lead article, entitled "Taxation and Land Titles Under Article XIII of the West Virginia Constitution," 65 *W. Va. L. Rev.* 263 (1963), provides a simple and workable explanation of what the terms, "delinquency" and "forfeiture" mean:

> *"Delinquent Lands:* Delinquent lands are those upon which the owner failed to pay taxes and which have been listed as delinquent by the county sheriff and purchased by him for the state at public sale. [or sold by him to "private" purchasers, i.e. individuals, at the sale. *W. Va. Code* 1931, 11A-3-4, as amended] .... The terms 'delinquent' and 'forfeited' are vastly different.

> *"Forfeited Lands:* Lands become forfeited when the owners fail to enter them for taxation on the land books of the proper counties and no taxes are paid on them for five consecutive years. This land is forfeited to the state by operation of law and no formalities are necessary to

convey title to the state. Lands are forfeited only for non-entry, not for non-payment of taxes." *Id.* at 268-69.

The distinction between the two was first recognized by this Court in *Waggoner v. Wolf,* 28 W. Va. 820, 1 S.E. 25 (1886), when it stated:

"There is a vast difference between delinquency and forfeiture. The former means simply that the owner has failed to pay the taxes due on his land, and in consequence it has been returned delinquent and is subject to the State's lien for the taxes and liable to be sold therefor. But by forfeiture the former owner is entirely divested of all his interest in the land and the title thereto becomes absolutely vested in the State. By reason of the delinquency the State may sell the land under her lien for taxes, while a forfeiture vests the absolute title in the State. *Id.* at 828.

The facts reveal that the name of Cecle G. Pearson, the appellant, who obtained the subject interest in 1937, was not entered into the land books from 1938 to 1966. Rather her son's name, H. C. Pearson, Jr., from whom she received the property, remained on the land books during this entire period. If Mrs. Pearson's failure from 1938 to 1943 to enter her own name constituted a forfeiture, then the State automatically would have acquired ownership in the subject interest in 1943. The subsequent delinquency sale in 1962 would have been meaningless. *See, Bailey v. Baker, et al.,* 137 W. Va. 85, 68 S.E.2d 74 (1951).

Forfeiture has been described as "a harsh, even dreadful, remedy"; courts generally disfavor it "and never apply it except where the law clearly warrants." *State v. Cheney, et al.,* 45 W. Va. 478, 480, 31 S.E. 920, 921 (1898). In fact, there exists a presumption against a forfeiture of title for non-entry until overthrown by the State. *State v. Hines-Bailey Corp.,* 103 W. Va. 180, 136 S.E. 780 (1927); *State v. Bear Mountain Coal Co.,* 99 W. Va. 183, 128 S.E. 84 (1925); *White Flame Coal Co. v. Burgess,* 86 W. Va. 16, 102 S.E. 690 (1920); *Wildell Lumber Co. v. Turk,* 75 W. Va. 26, 83 S.E. 83 (1914). Pertinent to the present

facts, this Court has held that entry on the land books in the name of the former owner, under the same title, prevents forfeiture. *Blake v. O'Neal,* 63 W. Va. 483, 61 S.E. 410 (1908). *See also, Stiles v. Layman,* 127 W. Va. 507, 33 S.E.2d 601 (1945). Although the facts in *Blake* are not identical to those in the present case, the similarities make the *Blake* decision persuasive. In both cases, an entry, albeit erroneous, on the land book did exist in the name of a relative, who was the former owner; furthermore, taxes were being paid by the true owners despite the erroneous entries.

These holdings are consistent with the Legislature's clear intent in *W. Va. Code* 1931, 11A-4-39a, that no entry shall result in a forfeiture "provided the identity of the land intended by such entry can be ascertained." This is true, despite errors in "the way in which the name of the owner, the area, the lot or tract number or reference, the local description, the statement of the interest or estate or other particulars are stated." *Id.* For these reasons, this Court is of the opinion that a forfeiture did not occur. Thus, title remained in Cecle G. Pearson until 1962 when the interest was sold to the State because of the delinquency occurring in 1961.

### III

The appellant has asserted, in the alternative, that if there was no forfeiture, then the various mistakes made during the tax sale proceeding, resulting from delinquency, constituted a total failure of the deputy commissioner's duties, voiding the tax deed acquired by the Dodds. *W. Va. Code* 1931, 11A-4-33, as amended, which cures mistakes made in the tax sale proceeding, provides:

> "Whenever, under the provisions of this article, a purchaser, his heirs or assigns, shall have obtained a deed for any real estate from the deputy commissioner, he or they shall thereby acquire all such right, title and interest in and to the real estate as was, at the time of the execution

and delivery of the deed, vested in or held by the State or by any person who was entitled to redeem, unless such person is one who, being required by law to have his interest separately assessed and taxed, has done so and has paid all the taxes due thereon, or unless the rights of such person are expressly saved by the provisions of sections twenty-seven or thirty-four [§ 11A-4-27 or 11A-4-34] of this article. The deed shall be conclusive evidence of the acquisition of such title. The title so acquired shall relate back to the date of the sale.

"Except as otherwise provided in this section, no irregularity, error or mistake in respect to any step in the procedure leading up to and including confirmation of the sale or delivery of the deed shall invalidate the title thereby acquired."

This curative provision is nearly identical in language to *W. Va. Code* 1931, 11A-3-29, as amended, which is entitled "Effect of irregularity on title acquired by purchaser."[1] This Court has held that such provisions apply "only to voidable deeds and not to deeds which are void because of jurisdictional defects." *Shaffer v. Mareve Oil Corp.,* W. Va., 204 S.E.2d 404, 408, 409 (1974). *See also, Gates v. Morris,* 123 W. Va. 6, 13 S.E.2d 473 (1941).

The purposes of these particular provisions and of Chapter 11A, Articles 3 and 4 in general, are explicitly stated in *W. Va. Code* 1931, 11A-3-1 and 11A-4-1, as respectively amended:

---

[1]"No irregularity, error or mistake in respect to any step in the procedure leading up to and including delivery of the tax deed shall invalidate the title acquired by the purchaser unless such irregularity, error or mistake is, by the provisions of sections sixteen, thirty, thirty-one, or thirty-two [§§ 11A-3-16, 11A-3-30, 11A-3-31 or 11A-3-32] of this article, expressly made ground for instituting a suit to set aside the sale or the deed.

"This and the preceding section [§ 11A-3-28] are enacted in furtherance of the purpose and policy set forth in section one [§ 11A-3-1] of this article."

"In view of the paramount necessity of providing regular tax income for the State, county and municipal governments, particularly for school purposes; and in view of the fact that tax delinquency, aside from being a burden on the taxpayers of the State, seriously impairs the rendering of these essential services; and in view of the further fact that delinquent land, with its attendant problems made acute by the events of the past decade, not only constitutes a public liability, but also represents a failure on the part of delinquent private owners to bear a fair share of the costs of government; now, therefore, the legislature declares that its purpose in the enactment of this and the following article [§ 11A-4-1 et seq.] is threefold: First, to provide for the speedy and expeditious enforcement of the tax claims of the State and its subdivisions; second, to provide for the transfer of delinquent lands to those more responsive to, or better able to bear, the duties of citizenship than were the former owners; and third, in furtherance of the policy favoring the security of land titles, to establish an efficient procedure that will quickly and finally dispose of all claims of the delinquent former owner and secure to the new owner the full benefit of his purchase."

. . . .

"In furtherance of the policy declared in section one [§ 11A-3-1], article three of this chapter, it is the intent and purpose of the legislature to establish a judicial proceeding for the sale of land for the school fund, which will be as expeditious, inexpensive and informal as possible without violating any claim which may fairly and properly be made on behalf of the former owner. . . ."

The appellant asserts that the following errors were so pervasive as to constitute a jurisdictional defect, rendering void the tax sale to the Dodds: (1) The notice by publication contained the wrong name of the former owner; (2) it described the land improperly; (3) it listed

the size of the land incorrectly; and (4) only ten days notice of the circuit court sale was given instead of the fifteen required under *W. Va. Code* 1931, 11A-4-23, as amended.

Individually, the first three mistakes have been held by this Court to be cured by predecessor statutory provisions. A misnomer of the former owner did not void the tax sale in *Jarrett v. Kimbrough,* 87 W. Va. 643, 105 S.E. 918 (1921), or in *Hamill v. Glover,* 74 W. Va. 152, 81 S.E. 970 (1914); a misdescription of a lot was held to be cured in *Matheny v. Jackson,* 83 W. Va. 553, 98 S.E. 620 (1919); and a misdescription of the amount of land has been said to be cured in *Leach v. Weaver,* 89 W. Va. 49, 108 S.E. 494 (1921), in *Robey v. Wilson,* 84 W. Va. 738, 101 S.E. 151 (1919), and in *Fleming v. Charnock,* 66 W. Va. 50, 66 S.E. 8 (1909).

Furthermore, the Legislature has been clear in revealing what it considers to be curable. With regard to the first error, i.e. the naming of H. C. Pearson, Jr. instead of Cecle G. Pearson, *W. Va. Code* 1931, 11A-4-12, as amended, specifically provides "that failure to name any such person as a defendant shall in nowise affect the validity of any of the proceedings. ..." As previously noted, *W. Va. Code* 1931, 11A-4-39a, as amended, considers these types of mistakes as not being so serious as to result in forfeiture. By analogy, such mistakes do not render the tax sale proceeding void. This is logical and fair in view of the fact that the appellant paid tax tickets for several years under the name of her son. She had ample opportunity to cure these mistakes herself; at any time, she could have notified the assessor and tax collecting officials of the proper entry and description of her interest, as the law requires. *See, W. Va. Code* 1931, 11A-4-2, as amended.

Neither is the error in the giving of only ten days notice so crucial as to affect the validity of the tax sale proceeding. As correctly pointed out in the appellees' brief, the primary purpose of the notice requirement in *W. Va. Code* 1931, 11A-4-23, as amended, is "[i]n order to

encourage attendance and bidding at the sale" and not to notify the former owner as such.

Thus, this Court is of the opinion that the errors complained of were cured by *W. Va. Code* 1931, 11A-4-33, as amended.

## IV

The appellants challenge the constitutionality of *W. Va. Code* 1931, 11A-4-12, as amended, asserting that it is violative of the due process clause of the Fourteenth Amendment in that it provides for service of process upon former owners by publication only:

> "Upon the institution of a suit as provided in section ten [§ 11A-4-10] of this article, the clerk of the circuit court shall enter an order of publication, without the filing of any affidavit by the deputy commissioner as required in other cases. Such order of publication shall give the style of the suit, as, State of West Virginia v. A. B. et al.; shall state that the object of the suit is to obtain a decree of the circuit court ordering the sale for the benefit of the school fund of all lands included in the suit; shall list all such lands, setting forth as to each item its local description, the former owner in whose name the land was forfeited, or was returned delinquent and sold, or escheated, as the case may be, and the names of such other defendants as may be interested therein; and shall require all the named defendants, and all unknown parties who are or may be interested in any of the lands included in the suit to appear within one month after the date of the first publication thereof and do what is necessary to protect their interests.

> "The order shall be published as a Class III-O legal advertisement in compliance with the provisions of article three [§ 59-3-1 et seq.] chapter fifty-nine of this Code, and the publication area for such publication shall be the county. The cost of such publication shall be charged ratably to each item listed in the suit, and shall be taxed to the State as part of its costs in the suit and paid as hereinafter provided.

"In view of the fact that the State has absolute title to all forfeited land, to all land sold to the State for nonpayment of taxes and become irredeemable, to all escheated land, and to all waste and unappropriated land, and must under the Constitution have such an absolute title before the land may be sold for the benefit of the school fund; and in view of the fact that the former owner of any such land, or any person claiming under him, has no further interest therein nor rights in respect thereto except such privilege of redemption as may be extended to him by the legislature as an act of grace; and in view of the further fact that all parties known and unknown who may claim an interest in any of the lands included in the suit are given notice thereof by the order of publication provided for above; therefore, the legislature deems it both expedient and necessary to provide that failure to name any such person as a defendant shall in nowise affect the validity of any of the proceedings in the suit for the sale of the State's title to such land; and in view of the fact that the supreme court of appeals in a decision just rendered has held that there is no constitutional requirement that the former owner or any other interested person be personally served with process in a suit for the sale for the benefit of the school fund of lands that are and must be the absolute property of the State; and in view of the further fact that in its last previous enactment of this section the legislature had no intention of requiring that personal service of process on named defendants in such a suit should be a mandatory condition precedent to the validity of any step or proceeding in such suit, but on the contrary expressly stated that failure to serve the summons on any named defendant should in nowise affect the validity thereof; now therefore, the legislature also deems it both expedient and necessary to provide that the failure to obtain such personal service on any named defendant in any suit instituted under the provisions of this article prior to the effective date hereof [March

> 11, 1949] shall in no way affect the validity of any step or proceeding in any such suit or the validity of the title acquired by the purchaser of land sold under any decree made or to be made in any such suit."

The very similar predecessor statute was attacked as unconstitutional in the case of *State v. Simmons*, 135 W. Va. 196, 64 S.E.2d 503 (1951), but the Court upheld the statute declaring it not to be "violative of the due process or other provisions of the Constitution of the United States or of the Constitution of West Virginia." *Id. Syllabus* point 1. The *Simmons* Court reviewed West Virginia's legislative and judicial history in this very difficult area of land titles and taxation, and we need not elaborate any further.[2] Appellant asserts, however, that the *Simmons* case is outmoded in view of the recent United States Supreme Court cases (*i.e.*, *Sniadach, Fuentes*,[3] etc.) that have extended the Fourteenth Amendment's procedural due process guarantees of reasonable notice and opportunity to be heard. Appellant relies heavily upon the case of *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), which was decided nine months prior to *Simmons* and of which the *Simmons* Court failed to take note. The appellant contends that *W. Va. Code* 1931, 11A-4-12, as amended, does

---

[2]For a more detailed account of West Virginia's unique problems during its early history, see "Taxation and Land Titles Under Article XIII of the West Virginia Constitution," 65 *W. Va. L. Rev.* 263 (1963). By way of illustration, this Court in describing the situation in West Virginia in 1871, stated that the " 'uncertainty and confusion of the land titles baffles the investigation and defies the ingenuity of the most assidious and astute. ...' " *Id.* at 267, quoting *Twiggs v. Chevallie*, 4 W. Va. 463, 469 (1871). *See also*, Colson, "Service Of Process In A Delinquent Lands Proceeding—A Suit That Is Not A Suit," 54 *W. Va. L. Rev.* 55 (1951), wherein the delinquent land problems in West Virginia in the 1940s are fully developed, being described as "comparable to that faced by the state immediately after its formation." *Id.* at 56. *See also, W. Va. Code* 1931, 11A-4-39, as amended.

[3]*Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

not meet the adequacy of notice test established in *Mullane*. In *Mullane*, the Court stated that:

> "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportu;nity to present their objections." *Id*. at 314 of the United States Report.

In establishing this test, the *Mullane* Court generally criticized the giving of notice by publication and specifically condemned such notice where the names and addresses of interested parties are known or easily ascertainable.

In establishing the test for adequacy of notice, the *Mullane* Court minimized the historical significance given to the type of action involved with regard to notice requirements. Explaining that the distinctions between *in rem* and *in personam* were ancient and unclear, the Court concluded:

> "[W]e think that the requirements of the Fourteenth Amendment to the Federal Constitution do not depend upon a classification for which the standards are so elusive and confused generally and which, being primarily for state courts to define, may and do vary from state to state." *Id*. at 312 of the United States Report.

This is helpful in our consideration of the present case because the sale of lands for the school fund under *W. Va. Code* 1931, 11-4-1, *et seq.*, as amended, has been described in a very indistinct manner by the West Virginia Court as "a proceeding *inter partes*, and substantially one *in rem*."[4] *State v. Simmons, supra*, at p. 206 of the West Virginia Report. Thus, the *Mullane* test for adequacy of notice substantially discourages judicial reliance upon semantical distinctions in the granting or

---

[4]In analyzing this statement, one commentator has remarked: "It is obviously not a suit *inter partes* in the normal sense of the term because there is no necessary and interested party defendant.

denying of relief based upon the characterization of the type of action involved.

Of course, the *Mullane* due process requirement, that notice be reasonably calculated to apprise "interested parties" of the pendency of action, presupposes under the Fourteenth Amendment that the parties retain or have some property interest to be affected by the action. In other words, if a person has no interest in the land that is being sold for the school fund, then he has no constitutional right to receive the kind of notice that *Mullane* demands. What exactly is meant by an "interested party" is not certain; however, the United States Supreme Court in *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) did shed further light on the matter when it stated:

> "The Fourteenth Amendment's protection of 'property' ... has never been interpreted to safeguard only the rights of undisputed ownership. Rather, it has been read broadly to extend protection to any significant property interest, ... including statutory entitlements.' *Id.* at p. 87 of the United States Report.

Thus, the crucial question for our determination is whether the prerogative contained in *W. Va. Code* 1931, 11A-4-18, as amended,[5] gives a former owner of property a significant interest, or something less, in the circuit court sale of such property. Under this provision, a for-

---

It is equally not a proceeding *in rem* to effectuate a forfeiture of title to the state, or to foreclose the interest or the rights of any interested parties, because there are none. Nor is it a suit *quasi in rem* which is a cross between the two. Probably the most that can accurately be said is that as a judicial proceeding this one is *sui generis.*" *Colson, supra,* at 64 (1951).

[5] *W. Va. Code* 1931, 11A-4-18, as amended, provides in pertinent part: "The former owner of any forfeited or delinquent land, or any other person who was entitled to redeem such land under the provisions of section eight [§ 11A-3-8], article three of this chapter, may file his petition in such suit with the circuit court ... at any time before confirmation of sale thereof requesting permission to redeem such land to the extent that title thereto remains in the State."

mer owner of delinquent land is given the opportunity to apply at any time before confirmation of sale for permission to redeem the interest formerly owned by him. This provision, however, does not confer on former owners an automatic right to redeem, and for this reason must be distinguished from *W. Va. Code* 1931, 11A-3-8, as amended,[6] which grants a former owner of delinquent land the right to redeem at any time within eighteen months after the date of the purchase by the State.

A great deal of confusion exists in this area, we believe, because historically this Court has considered redemption in general terms. Rarely has this Court acknowledged the distinction between *W. Va. Code* 1931, 11A-3-8 and 11A-4-18, as respectively amended. As a result, this Court has referred to redemption generally as a "right" in several cases, as a "privilege" in others, and as a "right or privilege" in still others. Two lines of West Virginia cases developed from this confusion: one, holding that the "right" to redeem was a substantial property right to be protected by the courts; the other, regarding redemption as a mere privilege or grace accorded by the State which, at any time could be restricted or revoked at the pleasure of the Legislature. *See, State v. Simmons, supra,* at 215-217. The *Simmons* Court was aware of the distinctions [between *Code* 11A-3-8 and *Code* 11A-4-18, *supra*] but failed to observe them in its analysis. The *Simmons* Court believed that "the exact character of the right or the privilege of redemption is unimportant or inconsequential," (*Id.* at 216, 217) but this is not true in light of the previous quote from *Fuentes v. Shevin, supra.*

---

[6]*W. Va. Code* 1931, 11A-3-8, as amended, provides in pertinent part: "The former owner of any real estate so purchased by the State, or any other person who was entitled to pay the taxes thereon, may redeem such real estate from the auditor at any time within eighteen months after the date of such purchase. Thereafter such real estate shall be irredeemable and subject to transfer or sale under the provisions of sections 3 and 4, article XIII of the Constitution."

Two opinions subsequent to *Simmons* compounded the confusion with respect to what exactly is conferred by these provisions. First, in the case of *Beckley v. Hatcher*, 136 W. Va. 169, 67 S.E.2d 20 (1951) this Court made the following ambiguous statements:

> "The former owners, under the provisions of the statute mentioned above, [*W. Va. Code* 1931, 11A-3-8, as amended] did not own the property against which the assessment was made, but only had the privilege of redeeming the same as a matter of grace. (citations omitted) The privilege of redeeming the land was ended upon the confirmation of the sale in the suits brought for the benefit of the school fund. See *State v. Gray*, 132 W. Va. 472, 52 S.E.2d 759; Sec. 33, Art. 4, Chapter 160, Acts of the Legislature, 1947." *Id.*, at p. 175 of the West Virginia Report.

In the first sentence, the Court held that the method provided a former owner to redeem under *W. Va. Code* 1931, 11A-3-8, as amended, was a "privilege." In the second sentence, the Court explained that this privilege ended upon the confirmation of sale in the suits brought for the benefit of the school fund, (citing by mistake *W. Va. Code* 1931, 11A-4-33, as amended, instead of *W. Va. Code* 1931, 11A-4-18, as amended). The point is that, by labeling redemption a "privilege" in both instances, the Court, impliedly, has equated the right to redeem [under *Code* 11A-3-8, *supra*] with the opportunity to apply for permission to redeem [under *Code* 11A-4-18, *supra*].

As a further example, the Court in *Work v. Rogerson*, 149 W. Va. 493, 142 S.E.2d 188 (1965) also misconstrued these provisions, in a *Syllabus* point, as creating entitlements of equal merit. On this occasion, the Court described both statutory means of redemption as "rights":

> "Under the provisions of Code, 1931, 11-10-30 (now appearing in revised form as Code, 11A-3-8), property sold by the sheriff for nonpayment of taxes and purchased by the state became irredeemable at the expiration of one year [now

eighteen months] from the date of such sale but the right to redeem arose again under the provisions of Code, 1931, 37-3-29 (now appearing in revised form as Code 11A-4-18), upon the institution of a suit by the commissioner of school lands to sell the property; and the right to redeem existed and continued until a sale and until a decree for the confirmation of the sale was made and entered by the court in such a suit, whether the state had obtained title to the property by purchase at a sheriff's sale or by forfeiture for nonentry." *Syllabus* point 9.

Although the Court's opinion in *Rogerson* does not support *Syllabus* point 9, *id.* we are impelled to disapprove the broad holding of this *Syllabus* point because of the holdings which follow.

It is our belief, and we so hold, that [under *Code* 11A-3-8, *supra*] a former owner possesses a statutory entitlement, *i.e.*, a right to redeem at any time within eighteen months of the date of the State purchase. If, however, redemption does not occur during this period, then the statutory entitlement no longer exists because absolute title has vested in the State. Only at this latter point in time is the State permitted by *W. Va. Const.*, Art. XIII, §§3 and 4 to institute a suit to sell lands for the school fund. *State v. Gray*, 132 W. Va. 472, 52 S.E.2d 759 (1949); *State v. Blevins*, 131 W. Va. 350, 48 S.E.2d 174 (1948); *State v. Farmers Coal Co.*, 130 W. Va. 1, 43 S.E.2d 625 (1947). Once this suit is commenced, a former owner [under *Code* 11A-4-18, *supra*] has only the opportunity to petition as a "privilege of redemption." But since it is purely discretionary with the court under *Code* 11A-4-18, as amended,[7] whether to accede to the redemption request, actually it is not accurate to refer to the former owner as possessing a "privilege" of redemption.

In any event, the point of this lengthy, but necessary, discussion is to clarify the interest of the former owner

---

[7]*W. Va. Code* 1931, 11A-4-18, as amended, provides in pertinent part, that "[t]he court ... *may* by proper decree, *permit* the petitioner to redeem the land. ... " (Emphasis supplied).

274

[under *Code* 11A-4-18, *supra*] in the circuit court sale of the State's title to his former property. At the time of the circuit court proceeding, the State has absolute title in the subject property; the former owner has no ownership at all.[8] Nor does such former owner have a statutory right to redeem. The Legislature, by its statement of intent and policy found in the last paragraph of *W. Va. Code* 1931, 11A-4-12, as amended, has been explicit in this regard. The former owner's opportunity to redeem is "extended to him by the legislature as an act of grace;" furthermore, "there is no constitutional requirement that the former owner . . . be personally served with process." *Id.* With respect to these statements, this Court recognizes the general rule stated in *State ex rel. Goodwin v. Rogers,* 158 W. Va. ____, 217 S.E.2d 65 (1975) that:

> "While a court is not compelled to accept legislative statements of intent and findings of facts when the statements contained therein are not warranted in law, such statements are entitled to great weight in support of the presumption that the Legislature does not intend to offend the requirements or inhibitions of the West Virginia Constitution." *Id. syllabus* point 2.

The foregoing has particular application when the subject—the grace extended by the legislative body—is a matter of pure legislative prerogative.

Therefore, it is our opinion, and we so hold, that the former owner is not such an interested party in the

---

[8]We are aware that *West Virginia Constitution,* Article XIII, Section 5, gives a former owner the right "to receive the excess of the sum for which the land may be sold over the taxes charged. . . . " But this interest has been held consistently to give a former owner an interest in personal property only, and consequently, not to give him any interest in the land or any right to be a party to the proceedings for the sale of such land. *State v. Gray,* 132 W. Va. 472, 52 S.E.2d 759 (1949); *State v. Blevins,* 131 W. Va. 350, 48 S.E.2d 174 (1948); *McClure v. Maitland,* 24 W. Va. 561 (1884).

[9]*Mullane v. Central Hanover Trust Co., supra; Fuentes v. Shevin, supra; North Georgia Finishing v. Di-Chem,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *State ex rel. Payne v. Walden,* W. Va., 190 S.E.2d 770 (1972).

circuit court sale to invoke the constitutional protections. The procedural due process guarantees found in such cases as *Mullane, Fuentes, North Georgia Finishing v. Di-Chem* and *Payne v. Walden,*[9] etc., do not extend so broadly as to embrace parties without a significant property interest.

Thus, in the final analysis, the conclusion reached in *State v. Simmons, supra,* still holds true:

> "In a suit to sell forfeited and delinquent lands for the benefit of the school fund, instituted under the provisions of Chapter 160, Acts of the Legislature, 1947, Regular Session, the former owner of such lands, who is named as a defendant in such suit, whether a resident or a nonresident of this State, may be proceeded against by an order of publication; and such procedure is not violative of the due process or other provisions of the Constitution of the United States or of the Constitution of West Virginia." *Id. Syllabus* point 1.

Further, since forfeiture did not occur, and the tax sale proceeding was valid, and the former owner's opportunity to redeem ended upon the "confirmation of the sale" to the Dodds [under *Code* 11A-4-18, *supra*], the appellant's payment of $101.86 to the State Auditor was no more than a colorable attempt to redeem which did not create or restore a significant property interest.

This opinion is intended to clarify the cases of *State v. Gray, supra, State v. Simmons, supra, Davis v. Hylton,* 135 W. Va. 815, 65 S.E.2d 287 (1951), *Beckley v. Hatcher, supra,* and *Work v. Rogerson, supra,* all of which failed to distinguish between a former owner's right to redeem under *W. Va. Code* 1931, 11A-3-8, as amended, and a former owner's opportunity to petition to redeem under *W. Va. Code* 1931, 11A-4-18, as amended. It is also meant to remove any implication contained in *State v. Mason,* W. Va., 205 S.E.2d 819, 823 (1974), that *W. Va. Code* 1931, 11A-4-18, as amended, provides a former owner the *right* to redeem. Cases decided by this Court, which dealt with interpretation of statutes in effect prior to March 8, 1947, are inapposite to the question considered on this

appeal, as those statutes were substantially different from those presently interpreted.

Within rational constraints, this Court has considered carefully every assignment of error placed before us by the appellant. Likewise, we have attempted to respond to all substantial contentions and legal propositions advanced by the excellent and exhaustive brief submitted by appellant's counsel. We have determined that the forceful arguments advanced to restore the property interest of a former owner must, necessarily, fall before compelling State interests—often recognized in prior decisions and tenaciously maintained in statements of legislative policy—to resolve uncertainties in land titles and to protect the State's revenues derived from land usage taxation. In this endeavor, we have intended to balance delicately the interests of the individual with those of all the State's citizenry, within the constitutional parameters of due process.

For the reasons herein stated, the final order of the Circuit Court of Kanawha County is affirmed.

*Affirmed.*