# CHARLESTON

WILDELL LUMBER CO. v. TURK *et als.*

Submitted September 22, 1914. Decided September 29, 1914.

1. VENDOR AND PURCHASER—*Bona Fide Purchasers—Registration of Title—Land in Several Counties.*

    If a tract of land lies partly in two or more counties, recordation of the deed in one only of such counties does not protect the portions lying in the others from the claims of creditors and subsequent purchasers for value and without notice. For full protection as to all parts of the land, the deed must be recorded in every county in which any of it lies. (p. 28).

2. TAXATION—*Sale of Land—Registration of Title—Deeds by Court Commissioners.*

    The recording acts of the state of Virginia in force in the year 1844 and sec. 5 of chap. 74 of the Code of this state apply to deeds made by court commissioners, in the execution of decrees of sale of forfeited and delinquent lands. (p. 28).

3. WILLS—*Construction—Presumption Against Intestacy.*

    General and indefinite language in a will is aided by the presumption against intestacy. (p. 30).

4. TAXATION—*Non-Payment of Taxes—Presumption—Forfeiture of Title.*

    There is a presumption against forfeiture of title for non-entry for taxation and non-payment of taxes, which relieves a plaintiff in a proceeding for vindication of his title, from necessity of proof of taxation thereof and payment of the taxes, until impeaching evidence has been adduced by the defendant. (p. 31).

5. APPEAL AND ERROR—*Equity—Disposition of Cause.*

    When the record of a chancery cause discloses lack of development of the merits of vital issues in the cause and strong probability of the existence of evidence decisive thereof, the decree is reversed and the cause remanded for further proceedings. (p. 31).

Appeal from Circuit Court, Pocahontas County.

Suit by Wildell Lumber Company against R. S. Turk and others. From decree for plaintiff, defendants appeal.

*Reversed and Remanded.*

*R. S. Turk* and *Mollohan, McClintic & Mathews,* for appellants.

*Talbott & Hoover,* for appellee.

POFFENBARGER, JUDGE:

The decree complained of on this appeal, annulled and cancelled the title papers of the defendants, in so far as they cover a certain tract of land claimed by the plaintiff or purport to confer title thereto.

The numerous assignments of error made by the appellants relate to the title of the plaintiff. It is said its title, if any it ever had, has been forfeited; that the land it claims is not sufficiently identified; that a certain will under which it claims does not confer title to the land; that the paper title relied upon shows an outstanding title in Craig, Beckley and Howlett; that the trial court had no right to permit the plaintiff to amend its proof after submission; and that the decree is erroneous because of its uncertainty.

The land in question is a tract of 1500 acres, known as lot No. 7, of the Holmes, Gale and Harness tract containing 11,100 acres, surveyed in 1794, and granted some time in the year 1796. In a school land proceeding, instituted by David Goff, Commissioner of Forfeited and Delinquent Lands, for the purpose, in the Superior Court of Law and Chancery for Randolph County, forfeiture and sale of the Holmes, Gale and Harness tract was decreed in the year 1843. For the purpose of the sale, the tract was divided into a number of lots of which No. 7 containing 1500 acres was one, and, by deed dated February 21st, 1844, David Goff, Commissioner, conveyed lots Nos. 6 and 7 of the plat to Johnathan Arnold, who it is claimed devised the same to his two sons, Stark W. Arnold and Thomas J. Arnold. The two sons and their wives conveyed said lots to John T. McGraw. McGraw conveyed them to Henry H. Craig, Eli M. Upton, John N. Beckley and

Alfred Amos Howlett. A deed from Upton and wife to the Greenbrier River Lumber Company, conveying said tract, was introduced as evidence, and successive conveyances to the Pocahontas Tanning Company and the plaintiff were shown.

The grant of 11,100 acres lies in two counties, Randolph and Pocahontas, part in each. The sale proceeding under which Goff conveyed the land took place in Randolph County and purported to include the entire grant. Later, in the year 1878, another such proceeding was instituted in Pocahontas County and extended to portions of the 11,100 acre tract which, it was claimed, lay in that county. Such proceedings were had in that cause that, on June 20th, 1888, a deed was ordered to be made to Yeager, England and McAllister, as purchasers of that portion of the grant, and it is under that deed that the defendants here claim.

An alleged defect in the certified copy of the deed from Goff, Commissioner, to Johnathan Arnold need not be considered. All of the land in dispute lies in Pocahontas County and the copy introduced shows recordation, if any, in Randolph only. That is not sufficient as to such portion of the tract as lies in the other county. In such cases the deed must be recorded in both counties. Code, ch. 74, sec. 6. That section was put into its present form to effect such result, Revisor's Report, p. 614, note.

This conclusion presupposes the application of sec. 5 of ch. 74 of the Code to deeds of the kind involved here. That section does not except such deeds and its terms are broad enough to include them. Moreover, it has been the uniform practice to record them as other deeds are recorded, and no reason for such an exception is perceived. No provision was made for registration thereof in the land office, as patents were recorded, and, in the early days of land forfeitures in Virginia, no judicial proceeding was required. The sheriff made the sale and executed the deed. See the collection of land forfeiture and sale laws in Revised Code of 1819 pp. 508 to 561. There must have been thousands of such deeds. Is it possible they were not required to be recorded, though all others had to be? The Act of March 30th, 1837, provided

for a Commissioner of Forfeited and Delinquent lands and re-
quiring him to report such lands to the Circuit Superior
Court, as a basis for a judicial order of sale, provided for an
order of sale by the court and execution of a deed, upon pay-
ment of the purchase money. That act authorized the court
"to direct said commissioner to make the sale of said lands in
the same manner, in all respects, as in the case of other lands
directed to be sold under decrees of said courts." Deeds
made under other judicial sales had to be recorded. An Act
passed February 24th, 1819, required every deed, without any
exception, to be proved, acknowledged or certified according
to law and delivered to the clerk of the court to be recorded,
within eight months after the sealing and delivery thereof,
in order to make it valid at the time of such sealing and de-
livery, and, if it was not acknowledged and delivered for
record within eight months, it was of no effect, as against sub-
sequent purchases for value and without notice, except from
the time of delivery for record. Revised Code of 1819, p.
364. In seeking the intent and purpose of the present statute,
it is proper to consider these old acts, since they were acts *in
pari materia*. Recordation of such deeds is clearly within the
intent and purpose of the registry laws. It is just as neces-
sary and essential to the validity of land titles that such deeds
be recorded as that others be recorded. Surely the old deeds
made by the sheriffs for forfeited lands were required to be
recorded. The deeds involved here do not differ from them
in their general purpose and character. They convey the
same kinds of land and effectuate the same purpose. The
only difference is in the character of the proceedings from
which they emanate. The decree under which the deed is
made is binding upon all parties to the suit and upon strangers
as to the interests of the parties and disposition thereof, un-
der the doctrine of *lis pendens*, but that does not extend be-
yond execution of the decree by delivery of the deed made
under it. Bennett, Lis Pendens, pp. 125, 195, 196, 288.
When the title passes to the purchaser by the deed, it is no lon-
ger in *custodia legis*. It is again free and in the market, and
the owner must protect and handle it as he would a title
otherwise acquired. And, in his purchase, he is subject to

the rule, *caveat emptor.* As against a strange title recordation is not necesary, but the parties here all claim the Holmes, Gale and Harness title.

Sufficiency of the recordation in Randolph County is asserted upon the ground of the existence of a dispute between the two counties as to the location of the line. Such a dispute arose some years after the sale in controversy, under the proceeding instituted by Goff in Randolph County, and the land here involved seems to be within the area then in dispute. The line, as now recognized, was agreed upon or ascertained in the year 1881, according to the pleadings in this cause, and the lands in controversy, formerly taxed in Randolph County, were then dropped from the land books of that county and put on the books of Pocahontas County. As the defendants did not acquire their deed, until October 1888, there was ample time for the recordation thereof in Pocahontas County, between the date of the settlement of the dispute and that of the recordation of the deed under which the defendants claim. Arnold may have recorded his deed in Pocahontas County within that period. Whether he did or not the record does not disclose by anything in the bill, answer or evidence. Nor does it appear whether the defendants, at the time of their purchase, had actual notice of Arnold's purchase, rendering recordation, as to them, unnecessary.

The language by which it is claimed Johnathan Arnold devised these lands to his two sons is very general. After having given to each of them other property clearly described, he gave each of them a one-half interest in all of his "out land" that he should own at the time of his death. These two sons were his only children, wherefore it was reasonable and natural for him to give them all of his property, and, as the will discloses no intention to bestow any portion of his estate upon any other person, it is likely he intended to give them equal parts of all of his estate, not disposed of by the other gifts to them. If the words, "out land," can be regarded as having been intended to include such of his real estate as was not given by specific description, of course the clause disposes of these wild lands. Aided by the legal presumption against intestacy, they are broad enough, in our opinion, to carry such

purpose and intent. There is such a presumption. *Smith* v. *Schlagel,* 51 W. Va. 245; *Carney* v. *Kane,* 40 W. Va. 758; *Bartlett* v. *Patton,* 33 W. Va. 71; *Houser* v. *Ruffner,* 18 W. Va. 244; *Irvin* v. *Zane,* 15 W. Va. 646.

There was no occasion for proof of payment of taxes. Forfeiture is an affirmative defense, the burden of which is upon the defendant. The plaintiff need not attempt to repel it, until impeaching. evidence has been adduced. Title once shown is presumed to continue. A mere denial of it, or assertion of forfeiture in the answer, is not enough to require negative proof from the plaintiff. The evidence of the county clerk of one county and the deputy clerk of the other to prove taxation of the land is admissible, however, if such evidence should be required; for it is the full legal equivalent of the certificate of the clerk, made evidence by the statute. There is likewise a presumption of payment of the taxes assessed, in favor of the plaintiff, which the defendant would have to overcome by proof.

The evidence adduced for identification of the land does not develop the merits of that question. It is much like that found in *Logan's heirs* v. *Ward,* 58 W. Va. 366, but we think it apparent that decisive evidence exists. The Goff deed calls for a line of the original grant. A witness testifies to the finding of an old corner, but he knew nothing of the lines or location of the old grant or the identity of the old corner he found. Whether any of its corners are undisputed or can be clearly established as a basis for a test by survey, of the identity of the corner claimed is not shown. Ordinarily a beginning point can be found. Documentary evidence indicates such an interlock as the plaintiff claims. There are some indications of its possession of a good cause of action, and the existence of additional evidence, such as ought to be decisive, is apparent, provided the Goff deed was recorded in Pocahontas County. If it was so recorded, or, if the defendants purchased with actual notice, the identity of the land is material, but, if not, it is immaterial. Under such circumstances, this court generally reverses the judgment or decree and remands the cause, to the end that the merits may be fully developed. *La Belle Iron Works* v. *Savings Bank,* 82 S. E.

75 W. Va.

614; *Cook* v. *Raleigh Lumber Co.*, 82 S. E. 327. It may be that the land cannot be identified, but that does not appear. Its identity may be immaterial but that does not appear.

The remaining assignments of error, going to matters susceptible of easy remedy in the court below, do not merit any discussion.

The decree will be reversed and the cause remanded.

*Reversed and Remanded.*