# CHARLESTON.

STATE *v.* HINES-BAILEY CORPORATION *et al.*

(No. 5742).

Submitted February 8, 1927. Decided February 15, 1927.

1.  TAXATION—*Payment of Taxes by One of Two Adverse Claimants, Who Both Claimed Title Mediately From Same Original Owner, Prevents Forfeiture to State (Code, c. 29, §§ 41, 49, 51; c. 105, § 19; Const. Art. 13, § 3).*

    Payment of taxes by one of two adverse claimants of land, both claiming title mediately from the same original owner, will prevent a forfeiture of title to the State.

    (Taxation, 37 Cyc. p. 1548.)

    (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Cabell County.

Suit by the State against the Hines-Bailey Corporation and another, to sell land for taxes. From an adverse decree, the named defendant appeals.

*Affirmed.*

*Livezey & McNeer,* for appellant.

*C. E. Kimbrough, T. G. Nutter* and *J. M. Ellis,* for appellee Pythian Mut. Inv. Ass'n.

WOODS, JUDGE:

This is a suit in chancery instituted in the circuit court
of Cabell county, by the State of West Virginia against Hines-
Bailey Corporation and Pythian Mutual Investment Associa-
tion, for the purpose of selling for the benefit of the school
fund of the state a certain parcel of land situate in the City
of Huntington, Cabell county, unless said property be re-
deemed. The bill alleges forfeiture to the state because of
non-entry for taxation from 1910 to 1923, inclusive, and that
the owner and claimant of record of said property is the de-
fendant, Hines-Bailey Corporation, and that some part at
least thereof is claimed by the defendant, Pythian Mutual In-
vestment Association. Both defendants filed separate answers,
contending that the land had never been forfeited for non-
payment of taxes, and each maintaining that it had caused the
same to be properly entered on the land books and had paid
taxes thereon. Likewise both prayed to be allowed to redeem
said land in case the commissioner should find the same to
have been forfeited. A commissioner was appointed, and his
report was later returned into court, finding therein that the
property was forfeited to the state for non-payment of taxes,
and that Hines-Bailey Corporation had a right to redeem.
The Pythian Mutual Investment Association filed exceptions
thereto, and the cause was submitted to the court upon such
exceptions. By a decree entered on October 17, 1925, said
exceptions were sustained, and the lot in question decreed not
to have been forfeited for non-entry on the land books, but
that the same had been assessed on the land books of said
county for taxation for all of the years aforesaid, and all the
taxes chargeable against the same had been charged to the
Pythian Mutual Investment Association, and by it duly paid,
and that Hines-Bailey Corporation is entitled to no relief
whatsoever. From this decree the Hines-Bailey Corporation
appeals.

The real estate in dispute herein is a rectangular plot ten
by thirty-five feet in size, designated on the following sketch
as plot HDFE. Lot 12, together with lots Nos. 13 and 14, a
part of block 93, constitute the corner at Second Avenue and
Ninth Street in said City of Huntington, and form a parcel
of land ninety by one hundred and forty feet in size.

The entire parcel of land ABCD was owned by J. L. Caldwell and George F. Miller, in fee, on the 11th day of May, 1894. On that day said owners conveyed the portion of said property, marked CEFG, to C. W. and L. M. Campbell, who in turn conveyed the same to James F. Sutphin, on April 1, 1906. Sutphin and wife, by deed dated January 26, 1907, conveyed the same tract to the defendant Pythian Mutual Investment Association. Said lot as described in said deeds is thirty-five by eighty feet. Caldwell and Miller retained title to the remainder of said lots Nos. 12, 13 and 14 until the death of George F. Miller, in 1910, when his half interest therein

passed to his sons, who conveyed to the Frederick Holding Company, and the Frederick Holding Company and J. L. Caldwell and wife, on April 25, 1921, conveyed all of said lots Nos. 12, 13 and 14, except the thirty-five by eighty foot parcel theretofore conveyed to L. M. and C. W. Campbell, to one S. J. Price. Price and wife, by deed dated October 4, 1921, conveyed all of said property, except the ten by thirty-five foot strip in dispute to Hines-Bailey Corporation, and by a deed dated January 25, 1922, purported to convey said ten by thirty-five foot parcel to said Hines-Bailey Corporation.

According to the commissioner's report, the various parts of Lots 12, 13 and 14, Block 93, were regularly entered for taxation up to and including 1909; Caldwell and Miller, having been assessed with "Lots 12, 13 & 14 (less 35x80)" up to and including 1909. In 1907, 1908 and 1909, and for each successive year since 1909, up to and including 1924, the 35x80 foot parcel of land, together with the improvements thereon, has been regularly entered on the land books for purpose of taxation in the name of Pythian Mutual Investment Association; and that, beginning with 1910 and continuing down to 1923, the entry on the land books of Caldwell and Miller and their successors is "Blk. 93—Lts. 12, 13 & 14 (90x105)". In 1924, however, the entry was "Blk. 93—Lts. 12, 13 & 14 (less 35x80)". The commissioner, in view of the entries on the land books from 1910 to 1923, inclusive, and that of 1924, arrived at the conclusion that the 10x35 foot parcel in dispute was not entered during said years (1910 to 1923, inclusive), so far as Hines-Bailey Corporation's predecessors were concerned; and, further, that it was not covered by the assessment of Pythian Mutual Investment Association's property.

On the hearing before this Court, the Hines-Bailey Corporation virtually admitted forfeiture, but insisted that it was entitled to redeem. The Pythian Mutual Investment Association, however, denied forfeiture, claiming that they have paid taxes on the entire tract marked HGCD.

The record shows that at the time lot CEFG was owned by L. M. and C. W. Campbell, the latter built a three-story

brick building thereon, said building covering the entire width of the lot and extending back to within four feet of the westerly end thereof. The lower floor was rented to a local newspaper, which soon desired additional floor space. C. W. Campbell, in order to retain his tenant, went to George F. Miller, one of the owners of the remainder of Lots Nos. 12, 13 and 14, and obtained his verbal consent to erect a portion of a one-story brick addition to the back end of said three-story building over onto and covering the strip of land in dispute. C. W. Campbell states that he was merely a tenant at will. He does not tell what inducements he held out to Sutphin, other than "the deed speaks for itself." As to just what property Sutphin claimed under his deed, the record is silent. All we know is by inference. Mr. Miller, of the Pythian Mutual Association, testifies that Sutphin "showed us the entire tract of land" supporting the buildings heretofore mentioned. While the 1906 assessment to Sutphin reveals a remarkable advance —the improvements being listed 78% and the real estate 140% higher than formerly—this evidence seems somewhat weakened, for the reason that all property in the state was re-valued in that year at its "true and actual value". But it is significant that the property was re-valued. The first floor of the entire building, as added to by Campbell, was being used by a newspaper as a tenant. The floor space was valuable to the lessor. Sutphin must have recognized its value and taken it into consideration at the time of the re-valuation of his property. Had he known that part of the one-story building was subject to removal on request, its temporary character would have been taken into account. It is improbable that the assessor in re-valuing the property would value only a portion of the lot covered by the building without making a note of it in order to check it against the proper parties. Sutphin transferred his holdings to the Pythian Mutual Investment Association, so Mr. Miller states, as one tract together with the improvements thereon. And the Association considered the building as one building and the tract one tract, and purchased in the light of such representations. It is reasonable to believe that they took it as an entire tract,

for the record shows that they entered into actual possession of the entire building. They rented the entire floor space of the first floor to the newspaper for several years, and have kept the entire first floor rented practically ever since. Their holding has been open, adverse, hostile and notorious during their entire ownership.

The presumption is against forfeiture, until overthrown by the State. *State* v. *Coal Land Co.,* 99 W. Va. 183; *White Flame Coal Co.* v. *Burgess,* 86 W. Va. 16; *Wildell Co.* v. *Turk,* 75. W. Va. 26; Code, Ch. 105, § 19. The fact that this small strip remained on the property books assessed to the predecessors in title of Hines-Bailey Corporation until 1909 does not affect the claim of the Pythian Mutual Investment Association, if it has been charged with taxes thereon. It is a matter of common knowledge that land conveyed may, through oversight, remain on the land books in the name of the vendor, although transferred to said books in the name of the vendee. It would not be contended that payment of taxes in the name of the vendee would not prevent a forfeiture of such land to the state. An entry into possession of said buildings and lot, and the payment of taxes thereon, would prevent forfeiture. § 3, Art. XIII, Constitution. A reasonable presumption is that the Association's possession extended to the entire lot covered by the building, and that it was assessed as a tract. See *State* v. *Cheney et als.,* 45 W. Va. 473. We do not attach the significance given by appellant to the provisions of sections 41 and 51 of chapter 29, Code, with reference to assessment of town lots. These sections merely direct that in entering town and city lots for taxation the officer whose duty it is to make the land books, among other things, shall enter the length and width thereof in feet, whereas in the assessment of other lands (Ch. 29, § 49, Code), the tracts shall be recorded on the rolls in acres and fractions thereof. In either respect the rule as to the assessment of the whole parcel would obtain. Hence the *Cheney* case is directly in point. While the Hines-Bailey Corporation's naked record title, as claimed, may have become forfeited by being left off the land books for five years after 1909, the title of the Pythian Mutual Investment Asso-

ciation was not forfeited by reason of their payment of taxes and possession of the land under claim of title. The use to which this property, located as it was in a business center of the city, was put for practically two decades inveighs strongly against its forfeiture for non-payment of taxes. If the state has received its taxes from the Pythian Mutual Investment Association, it is sufficient. One payment of taxes is all the state is entitled to receive. *Chilton* v. *White*, 72 W. Va. 545. Payment of taxes by one of two adverse claimants of land, both claiming title mediately from the same original owner, as here, will prevent a forfeiture of title to the state. *Custer* v. *Hall*, 71 W. V,a. 119; *Blake* v. *O'Neal*, 63 W. Va. 483; *Kelly* v. *Dearman*, 65 W. Va. 49; *State* v. *Allen*, 65 W. Va. 335.

For these reasons, we are of opinion to affirm the circuit court in sustaining the exceptions of the Pythian Mutual Investment Association to the commissioner's report and the decree appealed from.

*Affirmed.*