# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Spring 2024 Term

_____

No. 23-ICA-154
No. 23-ICA-155

_____

FILED

July 12, 2024

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

NORTHEAST NATURAL ENERGY, LLC, NNE PROPERTIES, LLC, PACHIRA
ENERGY, LLC, AND PACHIRA ENERGY HOLDINGS, LLC,
Defendants Below, Petitioners,

v.

LT REALTY UNLIMITED, LLC,
Plaintiff Below, Respondent.

and

DAVID TENNANT, BY AND THROUGH DEBORAH TENNANT, HIS
GUARDIAN AND CONSERVATOR, AND YURI DMITRI POPOV,
Defendants Below, Petitioners,

v.

LT REALTY UNLIMITED, LLC,
Plaintiff Below, Respondent.

_____

Appeal from the Circuit Court of Monongalia County
Honorable Cindy S. Scott, Judge
Civil Action No. 18-C-494

REVERSED

_____

Submitted:  March 13, 2024
Filed:  July 12, 2024

Seth P. Hayes, Esq.
Dale H. Harrison, Esq.
Jackson Kelly PLLC
Morgantown, West Virginia

Albert F. Sebok, Esq.
Jackson Kelly PLLC
Charleston, West Virginia
Counsel for Petitioners
Northeast Natural Energy, LLC, and
NNE Properties, LLC

Roger L. Cutright, Esq.
Andrew Cutright, Esq.
Cutright Law, PLLC
Morgantown, West Virginia
Counsel for Petitioners
Pachira Energy, LLC, and
Pachira Energy Holdings, LLC

James A. Walls, Esq.
Matthew P. Heiskell, Esq.
Spilman Thomas & Battle, PLLC
Morgantown, West Virginia
Counsel for Petitioners
David Tennant and Yuri Dmitri Popov

William J. Leon, Esq.
William J. Leon, L.C.
Morgantown, West Virginia
Counsel for Respondent

CHIEF JUDGE SCARR delivered the Opinion of the Court.

SCARR, CHIEF JUDGE:

This matter involves two consolidated appeals concerning the ownership of certain oil and gas interests in Monongalia County, West Virginia. Respondent LT Realty Unlimited, LLC ("LT Realty") brought a declaratory judgment action[1] in the Circuit Court of Monongalia County to determine the ownership of a 2/8 undivided interest in the oil and gas rights ("subject oil and gas") underlying a 118-acre tract[2] once owned by George Tennant, grandfather of Petitioners David Tennant and Doug Tennant (now Yuri Dmitri Popov) (collectively the "Tennant Petitioners"). Petitioners Northeast Natural Energy, LLC; Pachira Energy, LLC; Pachira Energy Holdings, LLC; NNE Properties, LLC; David Tennant, and Yuri Popov appeal from an order entered by the circuit court granting partial summary judgment in favor of LT Realty and denying Petitioners' motions for summary judgment. We reverse.

---

[1] In addition to seeking a declaration that it was the owner of the subject oil and gas interests, LT Realty pursued claims for trespass and slander of title in the trial court which are not part of this appeal.

[2] The surface tract overlying the subject oil and gas is sometimes referenced in the documents of record as 119 acres. On appeal, the petitioners have referred to this tract as being 119 acres, while LT Realty has referred to it as being 118 acres. This small discrepancy does not affect our analysis or result, and for the sake of consistency, we shall refer to it as a 118-acre tract in this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Assessment of Interests In George Tennant's Name

In 1938, when George Tennant died, he possessed a 2/8th interest in the oil and gas underlying the 118-acre surface tract, being the entire interest comprising the subject oil and gas; a 3/8th interest in the overlying 118-acre surface estate; and a 3/8th interest in a 136-acre Sewickley Coal Seam estate ("Sewickley Coal").[3] From 1938 until 1941, the subject oil and gas and the overlying 118-acre surface tract were assessed in George Tennant's name as a single assessment, described as follows: "3/8 118 Sur. O&G Days Run." Also, from 1938 through 1940, there was a separate assessment in the name of George Tennant for Sewickley Coal, described as follows: "3/8 136.192 Sew. C." The parties agree that the subject oil and gas was not entered in the land books and was not separately assessed for taxes in 1941 or any subsequent year before it was allegedly acquired by LT Realty in 2015 through a special warranty deed from Elemental Resources.

---

[3] Most of the Sewickley Coal interest underlies the same surface estate as the subject oil and gas, with the remaining portion of the Sewickley Coal estate underlying an adjoining 17-acre tract. Ownership of this coal interest is not disputed on appeal.

**B. Partition of the Surface Tract Following George Tennant's Death**

In 1940, as part of a partition action among various owners of the subject oil and gas's 118-acre surface estate, the entire interest in the 118-acre surface estate was conveyed to Velma Jewel Chisler, with the subject oil and gas and Sewickley Coal being expressly excepted and reserved. Subsequently, in 1941 there was one assessment in the name of Velma Jewel Chisler for "119.171 SUR DAYS RUN," and another assessment in the name of George Tennant for "3/8 136.192 Sew. C."[4] There was no separate assessment for the subject oil and gas placed on the land books in 1941 or any subsequent tax year up to and including 2015.[5] The 1941 land book entry for "119.171 SUR DAYS RUN" in the name of Velma Jewel Chisler assesses the "Land Value" as $1,300.00, the same amount as the surface land plus oil and gas interest that had been assessed prior to partition. There is no dispute that this amount was paid by Ms. Chisler.

**C. Disposition of George Tennant's Realty**

In 1942, as part of the administration of George Tennant's estate, the subject oil and gas and Sewickley Coal interests, formerly possessed by George

---

[4] The 1941 land book strikes George Tennant's "3/8 118 acres Sur. O&G Days Run" from the books and notes Chisler as owning "119.171 Sur. Days Run."

[5] In 2016, LT Realty had the disputed oil and gas interest assessed in its name.

Tennant, were conveyed to Hazel Tennant, George Tennant's widow and the Tennant Petitioners' grandmother. In 1943, the Sewickley Coal assessment was transferred from the name of George Tennant to Hazel Tennant and described as "2/8 136.192 SEW. C. DAYS RUN."[6] Hazel Tennant never had the oil and gas interest entered in her name on the land books or separately assessed from the surface. In fact, the parties do not dispute that there was no separate assessment of the subject oil and gas in 1943 or any subsequent year up to and including 2015. Petitioners maintain, however, that the subject oil and gas throughout this time was encompassed in the assessment of Velma Jewel Chisler, described as "119.171 SUR DAYS RUN."

In 1974, Hazel Tennant (now Hazel Gawthrop) conveyed whatever interest she might have possessed[7] in the subject oil and gas to her son and daughter-in-law, Karl Tennant and Carolyn Tennant, the parents of the Tennant Petitioners. In 1987, Karl and Carolyn Tennant divorced, and Karl Tennant was awarded all realty that he and Carolyn Tennant owned in Clay District, Monongalia County, West Virginia, including the subject oil and gas and Sewickley Coal. In 2005, Karl Tennant died

---

[6] The 1943 assessment incorrectly refers to the fractional interest in Sewickley Coal that was transferred to Hazel Tennant as "2/8" rather than "3/8." This error was carried forward up to and including the 2015 tax year but does not affect our decision.

[7] The parties dispute whether her interest in the subject oil and gas was automatically forfeited to the State in 1947 for nonentry in the land books.

4

intestate. Prior to Karl Tennant's death, he never had the subject oil and gas entered on the land books or separately assessed.

Karl Tennant was survived by his second wife, Wilma J. Tennant, and three surviving children, Trey Brock Allan Tennant and the two Tennant Petitioners. In 2013, the Tennant Petitioners leased the interest in the subject oil and gas they believed they had inherited from their father, Karl Tennant, to Petitioners Northeast Natural Energy and Pachira Energy. In May 2015, Wilma J. Tennant conveyed the interest in the subject oil and gas she believed she had inherited from Karl Tennant to Petitioners Northeast Natural Energy and Pachira Energy. Also, in May 2015, Trey Brock Allan Tennant conveyed the interest in the subject oil and gas he believed he had inherited from his father, Karl Tennant, to Petitioners Northeast Natural Energy and Pachira Energy. Subsequently, in June 2015, Petitioners Northeast Natural Energy and Pachira Energy conveyed a royalty interest in certain oil and gas formations, including the subject oil and gas, to Petitioners NNE Properties and Pachira Energy Holdings.

**D. Issuance of Tax Deed to Shuman, Inc.**

In 1992, due to the alleged non-payment of taxes, a tax deed for the interest in realty identified as "2/8 136.192 Sew C. Days Run," assessed in the name of Karl or Carolyn Tennant, was issued to Shuman, Inc. for non-payment of property taxes.

5

In its Order, the circuit court found the subject oil and gas was also conveyed to Shuman, Inc. ("Shuman") in this tax deed because the subject oil and gas was never separately assessed following its severance from the surface. The circuit court did not address the fact that the land value assessments for the surface estate remained constant following the severance of the subject oil and gas.

### E.  Issuance of Tax Deed to Elemental Resources, LLC

In 2010, another tax deed for the realty identified as "2/8 136.192 Sew C Days Run, Clay District," assessed in the name of Shuman, was issued to Elemental Resources, LLC ("Elemental Resources") for non-payment of property taxes. The circuit court concluded the subject oil and gas was also conveyed in this Sewickley Coal tax deed because Shuman, Inc. never had the subject oil and gas separately assessed apart from the surface estate following the acquisition of the 1992 Sewickley Coal tax deed. Following Elemental Resources' acquisition of the 2010 Sewickley Coal tax deed, it too never had the subject oil and gas separately assessed.

**F. Special Warranty Deed Issued to LT Realty**

In April 2015, Respondent LT Realty contacted Elemental Resources about purchasing certain Sewickley Coal Seam interests. On April 27, 2015, a representative of Elemental Resources emailed the sole member of Respondent, stating:

> **It was a pleasure speaking with you today about our coal parcels in Monongalia [C]ounty**. Attached is a list of **coal properties** we have for sale in Monongalia County. Our asking price is $20 per net acre. If you are interested in taking everything on the list we would let it go for $15 per net acre. **The one you called about is highlighted in red**. If you have any questions let me know.

(Emphasis added). There is an accompanying spreadsheet attached to this email with various Sewickley Coal Seam interests identified. The "one" referenced in the email is highlighted in red and reads: "2/8 136.192 Sew C Days Run." The "one coal parcel" Respondent contacted Elemental Resources about is the Sewickley Coal interest granted to Elemental Resources in the 2015 tax deed. There is no reference or mention of an oil and gas interest in any correspondence between Respondent and Elemental Resources.

Three days following the April 27, 2015, email exchange, Elemental Resources issued a special warranty deed to LT Realty for certain interests described as follows:

7

> All that certain parcel of land, situate in the Clay District, of Monongalia County, State of West Virginia described as follows: 2/8 136.192 Sew C Days Run, and being parcel 0400-0731-0000 as shown on tax map 9999, which said map is filed in the office of the Clerk of the County Commission of Monongalia County, West Virginia.
>
> Being the same property conveyed to Elemental Resources LLC from G. Russell Rollyson Jr., Deputy Commissioner of Delinquent and Nonentered Lands of Monongalia County, West Virginia, bearing the date of November 4, 2010 and of record in the Office of the Clerk of the County Commission of Monongalia County, West Virginia in Deed Book 1423 at page 854.

The consideration paid in the special warranty deed is the same ($1,021.00 rounded to the nearest dollar) as the price Elemental Resources offered to sell its Sewickley Coal interest for in its April 27, 2015, email. LT Realty claims it acquired the subject oil and gas through this conveyance although an oil and gas interest was not expressly referenced.

### G. Procedural History

On December 28, 2018, LT Realty filed a lawsuit in the Circuit Court of Monongalia County, West Virginia against four corporations, Northeast Natural Energy, LLC; NNE Properties, LLC; Pachira Energy, LLC; and Pachira Energy Holdings, LLC. Among other relief, this action sought to quiet title to a 2/8 undivided interest in the subject oil and gas. The complaint was subsequently amended to add two indispensable

parties, David Tennant, by and through his guardian and conservator, Deborah Tennant, and Yuri Dmitri Popov.

All parties filed motions for partial summary judgment concerning the ownership of the disputed 2/8 interest in the subject oil and gas. These motions were argued on September 28, 2020. On March 17, 2023, the circuit court entered an order granting LT Realty's motion for partial summary judgment and denying all the motions filed by Petitioners. This order held that LT Realty owned the disputed interest in the subject oil and gas. According to the circuit court, the subject oil and gas interest was forfeited to the State for nonentry in 1947, five years after it was transferred to Hazel Tennant. The circuit court concluded that it then passed to Shuman through a tax deed for the delinquent Sewickley Coal interest.[8] It also concluded that when Shuman failed to pay its taxes on the Sewickley Coal interest, Elemental Resources acquired the oil and gas interest through another tax deed for the Sewickley Coal interest, and allegedly passed it on to LT Realty through a special warranty deed, even though no oil and gas interest was mentioned in that deed. Pursuant to Rule 54(b) of the West Virginia Rules

---

[8] Because we hold that the subject oil and gas did not forfeit to the State in 1947, we will not address whether the tax deed which identified only the delinquent Sewickley Coal interest could also convey the subject oil and gas that was allegedly forfeited for nonentry on the land books.

of Civil Procedure, the circuit court certified the March 17, 2023, order as a final order from which the parties could appeal. Petitioners appeal from this order.

Petitioners Northeast Natural Energy, LLC, NNE Properties, LLC, Pachira Energy, LLC, and Pachira Energy Holdings, LLC brought appeal No. 23-ICA-154. Petitioners David Tennant, by and through Deborah Tennant, his guardian and conservator, and Yuri Dmitri Popov, brought appeal No. 23-ICA-155. These appeals were consolidated for purposes of consideration and decision.[9]

## II.  STANDARD OF REVIEW

The circuit court granted Respondent's motion for partial summary judgment as to Respondent's declaratory judgment cause of action and denied Petitioners' respective motions for partial summary judgment. Therefore, this Court's review of the circuit court's decision is *de novo*. *See Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 89, 576 S.E.2d 807, 816 (2002) (rulings on summary judgment motions are reviewed *de novo*); *see also* Syl. Pt. 3, *Cox v. Amick*, 195 W. Va. 608, 466

---

[9] Rule 20 oral argument was held in these consolidated appeals on March 13, 2024.

S.E.2d 459 (1995) (a circuit court's entry of a declaratory judgment is reviewed *de novo*).

## III. DISCUSSION

All Petitioners assert that the circuit court erred when held that LT Realty owned the subject oil and gas. More specifically, it erred when it failed to find that the subject oil and gas was presumptively assessed with the surface interest possessed by Velma Jewel Chisler.[10] Because the subject oil and gas was presumptively assessed with the surface estate, and Ms. Chisler paid her taxes, they argue that it never went non-entered or unpaid, and thus was never forfeited or sold to the State. Accordingly, they conclude that it could not be, and was not, subsequently conveyed in a tax deed because it was never subject to a tax sale. Because we agree with this conclusion, we need not address the other assignments of error raised by Petitioners.

---

[10] Although the circuit court recognized that presumptive assessment was asserted by Petitioners, it did not explain if and how this presumption had been overcome by LT Realty. Petitioners have not requested that this matter be remanded for findings of fact and conclusions of law specific to this issue, and we conclude that the record is sufficient as it stands to resolve this issue on appeal, and that it is not necessary to remand the case to the circuit court for more detailed findings and conclusions. *See Toth v. Bd. of Parks & Recreation Comm'rs*, 215 W. Va. 51, 55, 593 S.E.2d 576, 580 (2003).

11

### A. LT Realty's Standing to Argue Forfeiture Through Nonentry

Before addressing the merits of the forfeiture issue, we note that the Petitioners have questioned the standing of LT Realty to assert that a forfeiture occurred. According to Petitioners, regardless of whether there was a forfeiture, the special warranty deed given by Elemental Resources to LT Realty was insufficient to transfer any interest other than an interest in Sewickley Coal. Therefore, they argue, LT Realty has no standing to argue about forfeiture.

LT Realty responds that standing was never raised in the circuit court, and consequently that issue should not be considered on appeal. Furthermore, LT Realty argues that the special warranty deed was sufficient to convey any interest in the subject oil and gas which Elemental Resources might have acquired, and that it was necessary to prove every step in its chain of title in order to prevail.

We note initially that standing was raised in the circuit court (although it does not appear to have been a major issue),[11] and that even if it had not been raised below, standing is, indeed, a jurisdictional issue which can be considered for the first

---

[11] Standing was raised in the Memorandum of Law in Support of Defendants Northeast Natural Energy, LLC, and NNE Properties, LLC's Motion for Summary Judgment.

12

time on appeal. *See Kanawha Cnty Pub. Lib. Bd. v. Bd. of Educ.*, 231 W. Va. 386, 396, 745 S.E.2d 424, 434 (2013). As a rule, jurisdictional issues must be decided before issues going to the merits, but in this case, the alleged jurisdictional issue (standing), and the merits of the case (ownership), overlap. If LT Realty had a colorable ownership interest, and we conclude that it did under the circumstances of this case, then it had standing to address the forfeiture issue.[12] Having resolved the standing issue in favor of LT Realty, we now turn to the merits of the forfeiture issue.

**B. LT Realty Has Not Overcome the Presumption and Established Its Claim of Title**

The circuit court found that the 2/8 interest in the subject oil and gas was forfeited to the State in 1947, five years after the subject oil and gas was conveyed to Hazel Tennant, because she did not enter the subject oil and gas estate into the assessor's land book and taxes were not paid on the same. Prior to July 1, 1994, real property

---

[12] *See State ex rel. Leung v. Sanders*, 213 W. Va. 569, 580, 584 S.E.2d 203, 214 (2003) (Albright, J., concurring in part, dissenting in part) ("[Standing is] ordinarily held to have been met when a complainant makes a colorable claim of direct injury he… is likely to suffer") (internal quotation marks omitted) (quoting *Malerba v. Cessna Aircraft Co.*, 210 Conn. 189, 554 A.2d 287 (1989)); *240 GA, LLC v. Greenwich Harbor View Assn., Inc.,* FSTCV216053369S, 2023 WL 3193709, at *2 (Conn. Sup. Ct. April 26, 2023) ("standing only requires a colorable claim, not proof on the merits, sufficient to prevail at trial"); 37 C.J.S. *Forfeitures* § 54, Westlaw (database updated May 2024) ("For purposes of establishing constitutional standing in a forfeiture proceeding, a claimant must assert a 'colorable claim,' that is, a claim which is not frivolous.").

would be automatically forfeited to the State without court proceedings when it was not entered into the assessor's land books and taxes were not paid for five years. This forfeiture process was mandated by both our constitution[13] and statutes.[14]

Effective July 1, 1994, the West Virginia Legislature amended and reenacted portions of the West Virginia Code governing the sale of forfeited and delinquent lands. The five (5) year duty for landowners to enter property into land books

---

[13] Prior to its repeal, effective July 1, 1993, Article XIII §6 of the West Virginia Constitution read as follows:

> It shall be the duty of every owner of land, or of an undivided interest therein, to have such land, or such undivided interest therein, entered on the land books of the county in which it, or a part of it, is situated, and to cause himself to be charged with taxes legally levied thereon and pay the same. When, for any five successive years, the owner of any tract of land, or undivided interest therein, shall not have been charged on such land books with state, county and district taxes thereon, then, by operation hereof, the land, or undivided interest therein, shall be forfeited, and title vested in the State...

[14] Prior to its amendment reenactment, effective July 1, 1994, West Virginia Code § 11A-4-2 read as follows regarding the forfeiture of lands for nonentry:

> It is the duty of each owner of land to have his land entered for taxation on the land book of the appropriate county, and to have himself charged with the taxes due thereon. Land which for any five successive years shall not have been so entered and charged, shall by operation of law, without any proceedings therefor, be forfeited to the state as provided in section six, article thirteen of the Constitution, and shall thereafter be subject to transfer or sale....

and pay taxes remained. However, the forfeiture language was abrogated. West Virginia

Code § 11A-3-37 (1994) was amended to read as follows:

> It is the duty of the owner of land to have his land entered for taxation on the landbooks of the appropriate county, have himself charged with the taxes due thereon, and pay the same. Land which, for any five successive years, shall not have been so entered and charged shall, without any proceedings therefor, **be subject to the authority and control of the auditor** and such nonentered lands shall thereafter be **subject to transfer or sale under the provisions of this article relating to the auditor's disposition of lands certified to the auditor pursuant to section eight thereof.**

(Emphasis added).[15] The question presented for our review is whether the subject oil

and gas was automatically forfeited to the State before the statutory and constitutional

changes in the early 1990s.

---

[15] The relevant language in Article XIII §6 of the West Virginia Constitution was also abrogated. The constitutional and statutory changes were made because automatic forfeiture without court proceedings was deemed to violate the federal constitution. *See* Robert Louis Shuman, et al., *The Amended and Reenacted Delinquent and Nonentered Land Statutes—The Title Examination Ramifications*, 98 W.Va. L. Rev. 537, 546 (1996). These amendments were in response to litigation in another state regarding a similar statute, *see Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983), and an article published in the West Virginia Law Review. *See* John W. Fisher, II, *Forfeited and Delinquent Lands-The Unresolved Constitutional Issue*, 89 W. Va. L. Rev. 961 (1987). No decision from the Supreme Court of Appeals of West Virginia specifically held that automatic forfeiture without due process was unconstitutional.

Even before the law was changed, forfeiture for nonentry on the land books was not favored. As the Supreme Court of Appeals of West Virginia recognized in *Pearson v. Dodd*, 159 W. Va. 254, 261, 221 S.E.2d 171, 176 (1975), *overruled on other grounds*, Syl. Pt. 3, *Lilly v. Duke*, 180 W. Va. 228, 376 S.E.2d 122 (1988), forfeiture for nonentry was "a harsh, even dreadful, remedy," which "courts generally disfavor," and never apply unless "the law clearly warrants." Consequently, to avoid forfeiture, when possible, courts recognized a presumption against forfeiture. *Id; see also* Syl. Pt. 7, *White Flame Coal Co. v. Burgess*, 86 W. Va. 16, 102 S.E. 690 (1920) ("There is a presumption of entry of lands for taxation and payment of the taxes thereon, in favor of the owner and persons claiming under him, which stands until overthrown by proof to the contrary."); Syl. Pt. 4, *Wildell Lumber Co. v. Turk*, 75 W. Va. 26, 83 S.E. 83 (1914) ("There is a presumption against forfeiture of title for nonentry for taxation and nonpayment of taxes….").

Under this presumption, severance of title did not necessarily mean severance of taxation. "On a claim of forfeiture for nonentry of oil and gas which have been severed in title from that of the land under which they lie, it will be presumed that the land was assessed and taxed as a whole at the time of the severance, that it has since been carried on the land books in the same manner, and that the taxes have been paid on the land as a whole, when the contrary does not appear." Syl. Pt. 5, *Kiser v. McLean*, 67 W. Va. 294, 67 S.E. 725 (1910).

16

Our caselaw clearly establishes that when a mineral estate has never been separately assessed, it is assumed to be assessed with the surface, even when the surface owner and mineral owner are different. As the Supreme Court of Appeals explained in Syllabus Point 5 of *Sult v. A. Hochstetter Oil Co.*, 63 W. Va. 317, 61 S.E. 307 (1908):

> Forfeiture of the title to minerals in a tract of land for nonentry on the land books cannot be predicated on mere severance in title of the minerals from the surface and lapse of time, since presumptively the land was taxed as a whole when the severance occurred, and has since been carried on the land book in the same manner and the taxes paid.

In Syllabus Point 2 of *United Fuel Gas Co. v. Hays Oil & Gas Co.*, 111 W. Va. 596, 163 S.E. 443 (1932), the court declared:

> Where a grantor conveys the minerals in a tract of land, and the assessor fails to charge the interest so conveyed on the land book in the name of the grantee, for taxation, and the land remains charged in fee to the grantor at the full valuation, and he keeps the taxes paid thereon, there can be no forfeiture of the minerals for nonentry for five years in the name of the grantee.

In this case, the grantee, Velma Chisler, paid the taxes, rather than the grantor, but the principle remains the same.[16] As long as someone paid the property taxes for the oil and

---

[16] There is no dispute that Velma Chisler paid the property taxes assessed in her name. If Velma Chisler and/or her heirs failed to pay their taxes at any time during the years between the time when the surface and oil and gas interests were severed, and the time when the oil and gas interests were separately assessed, there is no evidence of it in the record.

gas interest, there could be no forfeiture, because the State is only entitled to one payment. *State v. Hines-Bailey Corp.*, 103 W. Va. 180, ___, 136 S.E. 780, 782 (1927).

The Supreme Court of Appeals of West Virginia has also instructed that establishing title through forfeiture to the State is an affirmative issue on which the party attempting to prove that it acquired title from the State after forfeiture bears the burden of proof. *See* Syl. Pt. 8, *White Flame Coal Co. v. Burgess*, 86 W. Va. 16, 102 S.E. 690 (1920) (stating that the party asserting forfeiture bears "the burden of proof of such forfeiture and all facts necessary to establishment thereof"); *Sult v. A. Hochstetter Oil Co.*, 63 W. Va. at ___, 61 S.E. at 311 (court noted that presuming that there was severance for taxation purposes because there had been a severance in title would require it to relieve the plaintiff, "in violation of the general rule of law, from the burden of proving an affirmative issue, its claim of title by forfeiture and transfer."); *Wildell Lumber Co. v. Turk*, 75 W. Va. 26, __, 83 S.E. 83, 85 (1914) ("Forfeiture is an affirmative defense, the burden of which is upon the defendant"). The parties agree that LT Realty bears the burden of overcoming the presumption and establishing its chain of title which allegedly starts with forfeiture to the State through nonentry.[17]

---

[17] At the September 28, 2020, hearing in circuit court, to his credit, counsel for LT Realty candidly admitted that it was his client's "burden to overcome the presumption that the assessment was accurate" and to "overcome the presumption that if it says surface, it probably might include oil and gas."

18

In this case, Petitioners contend that even though the subject oil and gas was not separately assessed in the land books, the evidence establishes that it continued to be assessed with the surface after severance in title. Specifically, the 1941 land book entry for "119.171 SUR DAYS RUN" in the name of Velma Jewel Chisler states that the assessed "Land Value" was $1,300.00, and the assessed "Building Value" was $500.00, for a "Total Assessed Value" of $1,800.00. A handwritten note accompanies this land book entry, stating that this assessed value is based on the total comprised value of the following individuals' assessments from 1940: George D. Tennant; Cora O. Berry; Zola Greyson; Emma R. Hunnell; Anna J. Pyles; Louvernia B. Shanes; Lillie C. Sine; and David A. Tennant. There is also a notation in the 1941 land book denoting which assessments of the prior owners were transferred to Velma Jewel Chisler and which account for the assessed "Land Value" of the property described in 1941 as "119.171 SUR DAYS RUN." Each of these handwritten notations states: "To Velma Jewel Chisler."

The total "Land Value" of the 1940 assessments that were transferred to Velma Chisler in 1941 (minus buildings) totaled $1,300.[18] Critically, the "Land Value" of the 1941 assessment for "119.171 SUR DAYS RUN" in the name of Velma Jewel

---

[18] The value of the buildings appears to have decreased from $550.00 to $500.00.

Chisler also equaled $1,300.00. Therefore, Petitioners argue that all real property interests encompassed in the individual assessments from 1940, which included the subject oil and gas previously assessed in the name of George Tennant, were transferred to Velma Jewel Chisler in 1941 in an assessment described as "119.171 SUR DAYS RUN." The fact that the value of those real property interests did not change between 1940 and 1941 allegedly establishes that the subject oil and gas continued to be assessed in the "119.171 SUR DAYS RUN" assessment in 1941. The parties agree that if Velma Chisler was assessed as owning the subject oil and gas interest, and paid the taxes thereon, that LT Realty cannot establish its claimed title.[19]

Respondent LT Realty argues, however, that the presumption against forfeiture was overcome, and its burden of proving its title through forfeiture to the State, and subsequent transfer from it, was met because the various owners of the oil and gas interest failed to have that estate separately assessed on the land books, there was no entry assessing Chisler as owning the oil and gas, and there were inconsistencies as to how mineral interests were assessed in the land books.[20] In addition, LT Realty

[19] During the September 28, 2020, hearing in circuit court, counsel for LT Realty openly acknowledged that if he did not "overcome the presumption that Ms. Chisler was assessed erroneously as owning the oil and gas, then I lose. I agree that's the threshold consideration."

[20] LT Realty emphasizes "inconsistencies" within the land books and describes how assessors classified similar real property interests in different classifications. For

20

speculated about what the assessor(s) knew and/or intended.[21] We conclude that these factors and speculation were insufficient to overcome the presumption against forfeiture through nonentry, and to meet LT Realty's burden of proof in establishing its claim to title.

## IV. CONCLUSION

For the reasons stated in our opinion, we hold that the subject oil and gas did not automatically forfeit to the State in 1947 for nonentry on the land books. Thus, it could not have been conveyed in a tax deed to Shuman, Inc. and then to Elemental Resources. In turn, Elemental Resources could not convey the subject oil and gas to LT Realty through a special warranty deed. Accordingly, the decision of the circuit court

---

instance, LT Realty notes that a 1941 land book assessment in the name of David Tennant for surface and "O&G" was listed as Class 3, but the same property in George Tennant's name was listed as Class 2. Respondent describes other alleged inconsistencies within the land books and argues that these "inconsistencies" "call into question whether and to what extent the property described in the 1941 Land Book as '118 SUR O.G. Days Run' assessed in the names of George Tennant and the other co-owners included a value attributed to the oil and gas in that parcel." Resp. Br. 17-8 in 23-ICA-154.

[21] The handwritten entry to the 1941 land books adding Velma Chisler as the owner of "119.171 Sur. Days Run Class 2 1300-500-1800" was accompanied by a handwritten note identifying the owners from whom she had acquired the tract and their respective ownership interests, indicating that the information came "From Chartiers Oil Co." LT Realty argues that: "It must be assumed that the assessor contacted Chartiers and requested this information, suggesting that the assessor knew George Tennant and the other heirs of Marion and Martha Tennant heirs owned the oil and gas in the tract acquired by Chisler." Resp. Br. 19 in 23-ICA-154.

granting partial summary judgment in favor of LT Reality against the various energy companies and the Tennant Petitioners is reversed.

Reversed.